UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
CORTNEY DUPREE,

                              Plaintiff,

                 -against-

CITY OF NEW YORK; Detective JUAN C. FERNANDEZ, Shield No. 229; Sergeant TIMOTHY HOROHOE, Shield No. 1657; Sergeant MICHAEL VITALE, Shield No. 1840; Detective MICHAEL ARENA, Shield No. 1668; Police Officer PATRICK CHILTON, Shield No. 4779; and JOHN and JANE DOE 1 through 10, individually and in their official capacities (the names John and Jane Doe being fictitious, as the true names are presently unknown),

                              Defendants.
------------------------------------------------------------------ X

**AMENDED COMPLAINT**

Jury Trial Demanded

14 CV 4307 (PKC) (MDG)

## PRELIMINARY STATEMENT

1. Plaintiff Cortney Dupree brings this action to challenge the constitutionality of a municipal policy, practice and/or custom through which the New York City Police Department ("NYPD") investigates, arrests and prosecutes individuals engaged in constitutionally protected online speech that is critical of the NYPD. He also contends that the NYPD has inadequately trained its officers in legal developments related to free speech in general and N.Y.P.L. § 240.30 specifically, which led to his arrest on March 27, 2013, in violation of the First and Fourth Amendments.

2. On March 27, 2013, pursuant to these policies, practices and/or customs, Mr. Dupree was falsely arrested inside his home for an online comment he made about community reaction to the death of Kimani Grey at the hands of members of the NYPD. Mr. Dupree's statements, which focused on police misconduct in the minority community, were highly critical of the NYPD.

3. Mr. Dupree was handcuffed, taken to a precinct and charged with Aggravated Harassment in the Second Degree (N.Y.P.L. § 240.30(1)(A)). After spending over 24 hours in custody, Mr. Dupree was released on his own recognizance. Mr. Dupree was then prosecuted for over a year before all of the charges were dismissed.

4. The NYPD's policies, practices and/or customs, along with the actions of the individual defendants, violated plaintiff's constitutional rights secured by the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States. Plaintiff seeks monetary damages, a declaratory judgment and his costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

5. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

6. The jurisdiction of this Court is predicated upon 28 U.S.C §§ 1331, 1343, 2201 and 2202.

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

8. Plaintiff demands a trial by jury in this action.

## PARTIES

9. Plaintiff Cortney Dupree ("plaintiff" or "Mr. Dupree") is a resident of Kings County in the City and State of New York.

10. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

11. Defendant Detective Juan C. Fernandez, Shield No. 229 ("Fernandez"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Fernandez is sued in his individual and official capacities.

12. Defendant Sergeant Timothy Horohoe, Shield No. 1657 ("Horohoe"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Horohoe is sued in his individual and official capacities.

13. Defendant Sergeant Michael Vitale, Shield No. 1840 ("Vitale"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Vitale is sued in his individual and official capacities.

14. Defendant Detective Michael Arena, Shield No. 1668 ("Arena"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Arena is sued in his individual and official capacities.

15. Defendant Officer Patrick Chilton, Shield No. 4779 ("Chilton"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Chilton is sued in his individual and official capacities.

16. At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives, supervisors, policy makers and/or officials employed by the NYPD. Plaintiff does not know the real names and/or shield numbers of defendants John and Jane Doe 1 through 10.

17. At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York and the NYPD. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

18. At all times relevant herein, all individual defendants were acting under color of state law.

## **THE NYPD'S POLICY, PRACTICE AND/OR CUSTOM**

20.     Within the Intelligence Division of the NYPD is a "Threat Assessment Protection Unit" that conducts Internet searches for the stated purpose of identifying threats to political figures and members of law enforcement.

21.     These Internet search results are provided to the "Cyber Intelligence Unit," also within the NYPD's Intelligence Division, which obtains the IP address of the computer from which a given posting was made and queries law enforcement databases in an effort to identify the individual responsible for the posting.

22.     Upon information and belief, in addition to searching for actual threats, these units also search for online posts critical of the NYPD.

23.     Upon information and belief, the NYPD, through these units, investigates, arrests and prosecutes individuals for engaging in constitutionally protected expressive activities.

24.     Upon information and belief, individuals other than Mr. Dupree have been arrested through this policy, practice and/or custom for exercising their First Amendment right to free expression.

25.     This policy, practice and/or custom has a chilling effect on expressive activity that is detrimental to society and also violates the First, Fourth and Fourteenth Amendments to the United States Constitution.

26. The NYPD has a constitutional obligation to keep its officers apprised of material changes in law related to issues of free speech and the First Amendment.

27. Through its "Legal Bureau," the NYPD publishes legal bulletins purporting to update the rank and file on legal developments, including court decisions bearing on the interpretation of the New York State Penal Law.

28. Despite a series of Court rulings, both state and federal, narrowing the application of N.Y.P.L. § 240.30 to protected speech, upon information and belief, the NYPD has never issued legal bulletins or otherwise trained its officers on the developing case law.

29. This failure to train amounted to deliberate indifference to the citizens of New York City and actually caused Mr. Dupree's arrest and prosecution.

## THE ARREST OF CORTNEY DUPREE

30. TheHoodUp.com is an Internet forum devoted to issues affecting the minority community and includes, *inter alia,* threads devoted to political discourse.

31. On or about March 14, 2013, in one such thread, Mr. Dupree made a comment about the death of Kimani Grey on March 9, 2013, at the hands of members of the NYPD. In this thread, which is attached to this Amended Complaint, Mr. Dupree repeated facts that had been previously reported, and

expressed his opinion regarding police misconduct in the African-American community.

32. Plaintiff's online comment constitutes protected speech under the First Amendment.

33. Pursuant to the NYPD's policy, practice and/or custom of monitoring Internet sites like TheHoodUp.com for postings critical of the department, NYPD employees discovered Mr. Dupree's post.

34. No reasonable officer could conclude that the content of Mr. Dupree's comment in the context in which it was written was criminal.

35. On or about March 27, 2013, defendant Fernandez and unidentified defendants appeared at Mr. Dupree's home and questioned him without the benefit of counsel.

36. Defendants interrogated Mr. Dupree about his March 14th posting and showed him pictures of, *inter alia*, Fred Hampton, a deceased activist and member of the Black Panther leadership.

37. Mr. Dupree acknowledged his posting of the subject comment.

38. Following their interrogation of Mr. Dupree, defendants had no evidence or reason to believe that Mr. Dupree had committed any crime or offense.

39. Notwithstanding, defendants handcuffed and searched Mr. Dupree in front of his mother and two young nephews.

40. Mr. Dupree was arrested and taken to a police precinct.

## MR. DUPREE'S INCARCERATION AND PROSECUTION

41. At the precinct, defendants continued their custodial interrogation of Mr. Dupree without an attorney present.

42. Mr. Dupree remained tightly handcuffed during the interrogation.

43. Thereafter, defendants generated police paperwork charging Mr. Dupree with a crime based on the March 14, 2013 posting.

44. At the time defendants prepared the paperwork, they knew they lacked probable cause or any evidence to support the arrest or prosecution of Mr. Dupree.

45. Defendant Fernandez materially misrepresented the text of plaintiff's post to prosecutors. Specifically, Fernandez changed the following sentence contained in Mr. Dupree's thread from "…I. *ant* wait [until someone kills a police officer]" to "…I *a'int* wait…". By doing so, Fernandez made the thread appear threatening.

46. Based on Fernandez's intentional misrepresentation, and at his urging, prosecutors in the Kings County District Attorney's Office prepared a criminal complaint charging Mr. Dupree with the crime of aggravated harassment.

47. The accusatory instrument contained the same material change to the text of plaintiff's post.

48. Detective Fernandez swore to the criminal complaint, under the penalty of perjury, knowing that he lacked probable cause for the arrest or prosecution and that he had altered the critical phrase.

49. For approximately 15 months, Mr. Dupree was compelled to appear in court, on the threat of the issuance of an arrest warrant and of arrest, to defend himself against a charge carrying a sentence of up to one year in jail.

50. On or about June 11, 2014, all charges against Mr. Dupree were dismissed.

51. Since his arrest and prosecution, Mr. Dupree has curtailed his expressive activity out of fear that he may be subject to further arrest and prosecution.

52. Mr. Dupree suffered additional damage as a result of defendants' actions. He was deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, anxiety, embarrassment, humiliation and damage to his reputation.

## FIRST CLAIM
### First Amendment Retaliation

53. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

54. The First Amendment protects Mr. Dupree's online statements.

55. Defendants' unlawful acts were motivated by and substantially caused by Mr. Dupree's exercise of free speech.

56. In retaliation for his online post, Mr. Dupree suffered, *inter alia*, false arrest and malicious prosecution.

57. Plaintiff has fear and apprehension that he will, again, be subject to similar unlawful acts by defendants for the purpose of limiting and preventing his First Amendment-protected activities.

58. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SECOND CLAIM
### Municipal Liability – *Monell*

59. The City of New York has a policy, practice and/or custom through which its NYPD employees monitor and search Internet forums to identify speech critical of the NYPD.

60. Pursuant to this policy, practice and/or custom, NYPD employees arrest innocent citizens for engaging in constitutionally protected speech.

61. Mr. Dupree's injuries resulted from this policy, practice and/or custom.

62. The City of New York is liable for the decisions of its final policymakers to create, promulgate and perpetuate this policy, practice and/or custom.

63. The City of New York is also liable for its deliberate indifference to the consequences of the policy, practice and/or custom, and for failing to train, supervise and/or discipline those employees responsible for creating, promulgating and perpetuating this policy, practice and/or custom.

64. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
### False Arrest

65. Mr. Dupree repeats and realleges each and every allegation as if fully set forth herein.

66. Defendants violated the Fourth and Fourteenth Amendments because they arrested Mr. Dupree without probable cause.

67. As a direct and proximate result of this unlawful conduct, Mr. Dupree sustained the damages hereinbefore alleged.

## FOURTH CLAIM
### Malicious Prosecution

68. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

69. By their conduct, as described herein, defendants are liable to plaintiff for the violation of his constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

70. The prosecution by defendants of plaintiff constituted malicious prosecution in that there was no basis for plaintiff's arrest, yet defendants continued with the prosecution, which was resolved in plaintiff's favor.

71. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM
### Denial Of Constitutional Right To Fair Trial

72. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

73. The individual defendants created false evidence against plaintiff, to wit, a materially altered version of his online post.

74. The individual defendants forwarded false evidence to prosecutors in the Kings County District Attorney's office.

75. In creating false evidence against plaintiff, and in forwarding false information to prosecutors, the individual defendants violated plaintiff's right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

-12-

76. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### SIXTH CLAIM
### Failure To Intervene

77. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

78. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

79. Accordingly, the defendants who failed to intervene violated the First, Fourth, Fifth, Sixth and Fourteenth Amendments.

80. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) A declaratory judgment that defendants violated plaintiff's rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983;

(b) Compensatory damages against all defendants, jointly and severally;

(c) Punitive damages against the individual defendants, jointly and severally;

(d) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(e) Such other and further relief as this Court deems just and proper.

Dated: December 18, 2014
New York, New York

HARVIS WRIGHT & FETT LLP

_____
Gabriel Harvis
305 Broadway, 14th Floor
New York, New York 10007
(212) 323-6880
gharvis@hwf.nyc

*Attorneys for plaintiff*